RALPH SCHMALL, Indiv. and as Adm'r of the Estate of Ralph C. Schmall, Jr., Deceased, *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF ADDISON *et al.*, Defendants-Appellees.

Second District   No. 2—87—0152

Opinion filed June 20, 1988.

Gary S. Tucker, of Law Offices of Gary S. Tucker, of Chicago, for appellant.

Hugh C. Griffin, Sharon F. Patterson, and Diane I. Jennings, all of Lord, Bissell & Brook, of Chicago, for appellees Village of Addison and Meade Electric Company.

Peter A. Zamis, of Rathje, Woodward, Dyer & Burt, of Wheaton, for appellee Commonwealth Edison Company.

JUSTICE DUNN delivered the opinion of the court:
Plaintiff, Ralph Schmall, Sr., filed this wrongful death action

against, *inter alia*, Commonwealth Edison Company (Edison) and the Village of Addison (Village) seeking recovery for the electrocution death of Ralph Schmall, Jr. Meade Electric Company (Meade), decedent's employer, was made a third-party defendant. The circuit court of Du Page County granted summary judgment for Edison, and also dismissed, on the Village's motion, claims filed on behalf of decedent's brother and sisters. On appeal, plaintiff argues (1) that the trial court erred in striking an expert's affidavit filed in opposition to the motion for summary judgment; (2) that even without the affidavit, a question of fact remains of whether Edison was negligent in maintaining its power lines; and (3) that a decedent's siblings may recover damages for loss of society in a wrongful death action. We find that both the grant of summary judgment for Edison and the dismissal of the siblings' claims were improper, and, accordingly, we reverse.

Plaintiff's amended complaint alleged that Ralph Schmall, Jr., an apprentice electrician employed by Meade, died of electrocution when the boom of a crane operated by another Meade employee came in contact with a high voltage Edison transmission line. At the time of the accident, decedent was helping a Meade crew install a light pole for the Village near the Edison lines. The count of the complaint directed against Edison alleged that Edison was negligent in permitting its high voltage wires to remain unguarded, unprotected, and uninsulated; in failing to provide adequate warning of the high voltage, and the danger of operating a crane in close proximity to the wires; in failing to de-energize the wire, and in failing to move the wire higher or underground or to divert current from the location of the accident.

Plaintiff also alleged that the manner in which Edison installed and maintained the wire violated the requirements of certain rules for construction of electric power and communication lines, commonly known as General Order 160 of the Illinois Commerce Commission (General Order 160). In particular, plaintiff alleged that Edison violated General Order 160's requirement to maintain lines in a condition as would enable it to furnish safe, adequate and dependable service, and failed to correct the unsafe condition posed by the Meade crane being in close proximity to the power line; that Edison failed to provide adequate ground clearance or guards for the line so as to prevent accidental contact; and that Edison failed to install and maintain the lines so as to reduce the hazard to life as far as practicable.

Count IV of the amended complaint alleged that the Village was similarly negligent, and also alleged that decedent's parents, his brother and his sisters all suffered pecuniary loss as a result of decedent's death. Plaintiff admitted in answers to interrogatories, how-

ever, that the siblings were not financially dependent on decedent. The interrogatory answers, filed December 7, 1983, state that decedent's brother was then 22 years old and that his sisters were 22 and 19 years old.

Edison based its motion for summary judgment on the deposition testimony of plaintiff's expert, Donald Miller. Miller testified that the Edison lines in question consisted of an uninsulated primary line carrying 7,200 volts of electricity, and an insulated secondary line carrying 240 volts. The primary line was 34½ feet above the ground, exceeding the minimum height requirements of General Order 160. Miller testified that General Order 160 did not require insulation of the primary line at the location of the accident other than by air space and that, under the circumstances presented, Edison's only obligation under General Order 160 was to keep the primary line above the vertical elevation requirements. After Miller opined that the Edison lines were probably in place before the light poles were positioned, the following colloquy occurred:

"Q. Under that factual situation, do you have an opinion, based upon a reasonable degree of engineering certainty, as to whether the Commonwealth Edison Company in this case, the Schmall case, violated any recognized standards, federal, state, regulation or any recognized engineering principle dealing with the transmission and distribution of power? Do you have an opinion?

A. I have an opinion.

Q. What is your opinion?

A. I have not uncovered any violations, no."

Although plaintiffs' complaint was predicated on the primary, 7,200-volt wire, and the documents Miller studied indicated contact with the primary, Miller also stated that he had a "feeling" that the contact was with the secondary, 240-volt line. Miller's theory required a supposition that the insulation on the 240-volt line had deteriorated to permit physical contact with the conductors, however, and he acknowledged that he did not in fact know the state of the insulation on that line. Subsequently, when asked whether the 240-volt line was in compliance with "all Commerce Commission regulations and good engineering practices," he responded that it was.

Edison filed only the transcript of Miller's deposition in support of its motion for summary judgment. Plaintiff responded by filing an affidavit from Miller, who stated that, in answering that "he had not uncovered any violations," he was referring only to the height of the wires and the assumption that the Edison wires were in place before

the light pole. He stated that his testimony could not be considered as a definite conclusion that Edison was in full compliance with General Order 160 other than as it related to the height of the wires. He also reiterated his opinion that the 240-volt line was involved in the accident and that Edison was not in compliance with General Order 160's inspection and testing requirements as to that line.

On Edison's motion, the trial court struck Miller's affidavit as impermissibly contradictory to his deposition testimony that the secondary line was in compliance with General Order 160. Considering only Miller's deposition, the trial court found there was no genuine issue of material fact as to Edison and granted summary judgment in Edison's favor. Plaintiff's motion for reconsideration was denied.

The trial court also granted the Village's motion for judgment on the pleadings as to the siblings' claims, based on the interrogatory answers which admitted that the siblings were not financially dependent on decedent. The order of dismissal was entered January 9, 1987, the court finding no just cause to delay enforcement or appeal of the order. Plaintiff filed a motion for reconsideration on February 2, 1987, which was denied on February 9, 1987. Notice of appeal was filed February 19, 1987.

■ We first consider whether the trial court properly struck Miller's affidavit. While Edison contends that the court properly struck Miller's affidavit because it conflicted with his sworn deposition testimony, plaintiff argues that the affidavit merely clarified an ambiguity raised in the deposition testimony. It has been held that a party or its agent may not defeat a motion for summary judgment by filing affidavits which conflict with that person's prior sworn testimony. (*Tom Olesker's Exciting World of Fashion, Inc. v. Dun & Bradstreet, Inc.* (1979), 71 Ill. App. 3d 562, 569.) To defeat recovery, an admission which contradicts the allegation of a complaint "must be deliberate testimony relating to a concrete fact, and not a matter of opinion, estimate, appearance, inference or uncertain summary." (*Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 147.) Where, however, a deponent "has not made deliberate, repeated and unequivocal statements, it is possible, for purposes of a motion for summary judgment, to controvert the claimed admissions made in those statements." *Young v. Pease* (1983), 114 Ill. App. 3d 120, 124.

■ We must determine, then, whether the statements Miller made at his deposition were so unequivocal and deliberate as to preclude explanation or contradiction by way of affidavit. In doing so, we are required to consider his entire deposition, not just isolated portions of it. (*Hansen v. Ruby Construction Co.* (1987), 155 Ill. App. 3d

475, 481.) Furthermore, his statements must be given a meaning consistent with the context in which they are found. (*Thomas v. Northington* (1985), 134 Ill. App. 3d 141, 147.) After reviewing Miller's entire deposition and considering the context in which his "admissions" were made, we find that his testimony did not so unequivocally establish Edison's freedom from negligence as to preclude explanation by affidavit. Up to the point where Miller testified that he had found no violations, the questions asked of him pertained to the elevation requirements of General Order 160 as affected by the assumption that Edison's lines were in place before the light poles, but he was not questioned about Edison's compliance with the other requirements of the order. Miller's affidavit does not contradict his deposition with regard to the elevation requirements of General Order 160, but merely sets forth his understanding of the questions he was asked. As such, we view Miller's affidavit as a proper attempt to explain his deposition testimony. (See *Trapkus v. Edstrom's, Inc.* (1986), 140 Ill. App. 3d 720, 722.) While we do agree that the portions of Miller's affidavit regarding the insulation of the 240-volt line were based entirely on speculation and should not have been considered (*Dyback v. Weber* (1986), 114 Ill. 2d 232, 244), we nevertheless conclude that the trial court erred in striking the entire affidavit.

██ █ It is well settled that summary judgment should be granted only when the pleadings, depositions and affidavits on file clearly show that no issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c).) In deciding if a genuine issue of material fact exists, the pleadings, depositions, admissions, exhibits and affidavits on file must be construed strictly against the movant and liberally in favor of the opponent. (*Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.) Under these standards, we believe summary judgment was improperly entered for Edison.

██ It is true that persons engaged in the transmission of electricity are not insurers of the public safety (*Merlo v. Public Service Co.* (1942), 381 Ill. 300, 313):

> "One engaged in the business of manufacturing, transmitting and distributing electric current is only required to exercise such care and caution as a person of ordinary prudence might reasonably be expected to exercise in the handling of such a silent and dangerous agency under similar circumstances, and if he places his wires in such a position that they will not inflict injury on a person in the exercise of his rights and privileges *** he has fully performed the duty which the law imposes on

him." (*Merlo*, 381 Ill. at 313.)

Due to the nature of the business, however, a utility company using highly charged wires owes a duty to see that such wires are properly placed and/or properly insulated where the conditions and circumstances reasonably indicate that persons might come in contact with or proximity to the wires. *Merlo*, 381 Ill. at 314; *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 665.

Plaintiff here alleged a breach of the above duty due to Edison's constructive knowledge of the proximity of the light pole to the high voltage lines and the foreseeability that someone working on the light pole might come in contact with the lines. In response, Edison relied exclusively on Miller's deposition to show that it fulfilled its duty. Despite Miller's opinion that the wires exceeded the elevation requirements of General Order 160, however, proof of such compliance is only considered evidence tending to show due care but is not conclusive of the question of negligence. (*Merlo*, 381 Ill. at 315; *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 1070.) Whether Edison was negligent in failing to insulate or move its wires at the location of the accident is a factual question requiring consideration of the particular conditions and circumstances, including whether it was reasonably foreseeable that persons might come in proximity to the wires. (*Sprague v. Commonwealth Edison Co.* (1978), 59 Ill. App. 3d 342, 347.) Since a question of material fact exists as to Edison's compliance with its duty to properly place and/or insulate its wires at the location of the accident, summary judgment was not warranted.

We next consider whether the trial court properly dismissed the claims made on behalf of decedent's siblings for loss of society. Initially, we note that the appeal from the order dismissing those claims was timely filed. The order granting the motion for judgment on the pleadings as to those claims, which included the necessary finding of appealability under Supreme Court Rule 304(a) (107 Ill. 2d R. 304(a)), was entered January 9, 1987. Plaintiffs filed a motion for reconsideration which was denied on February 9, 1987. Notice of appeal from that order was filed on February 19, 1987. Although our supreme court recently held that a motion to reconsider an order appealable under Rule 304(a) does not toll the time for appeal from that order, on denial of rehearing that ruling was made applicable prospectively to all cases in which the notice of appeal was filed or due to be filed on or after November 16, 1987. (*Elg v. Whittington* (1987), 119 Ill. 2d 344, 359.) Since plaintiffs filed the notice of appeal here within 30 days of denial of the motion to reconsider and well before the *Elg*

ruling was announced, it was timely filed, and we proceed now to the merits of the appeal.

■ Section 2 of the Wrongful Death Act (Act), under which the siblings' claims are made, provides in pertinent part:

"[I]n every such action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death, to the surviving spouse and next of kin of such deceased person." (Ill. Rev. Stat. 1977, ch. 70, par. 2.)

The term "next of kin" is meant to be interpreted in its technical sense under our system of intestate distribution. (*Wilcox v. Bierd* (1928), 330 Ill. 571, 581, *overruled on other grounds McDaniel v. Bullard* (1966), 34 Ill. 2d 487, 494; *Rodgers v. Consolidated R.R. Corp.* (1985), 136 Ill. App. 3d 191, 194-95.) Decedent's parents and siblings are considered his next of kin here since he left no spouse or children. (Ill. Rev. Stat. 1977, ch. 110½, par. 2—1(d); see *Maga v. Motorola, Inc.* (1987), 163 Ill. App. 3d 524, 530.) In this case, it appears that the surviving siblings were not financially dependent on decedent, as evidenced by plaintiffs' answers to interrogatories. The siblings' only claimed loss was that of decedent's society, so the issue here is whether the siblings' loss of society is a pecuniary loss compensable under the Act.

Our supreme court has not yet had the opportunity to answer this question, but several appellate court decisions have addressed the issue, reaching divergent conclusions. In *Prendergast v. Cox* (1984), 128 Ill. App. 3d 84, the first division of the Appellate Court for the First District refused to permit adult siblings to recover for loss of society. *Prendergast* has been followed by the United States Court of Appeals for the Seventh Circuit (*In re Air Crash Disaster Near Chicago, Illinois, on May 15, 1979* (7th Cir. 1985), 771 F.2d 338), and more recently was relied upon by the Appellate Court for the Fourth District for its holding that siblings may not recover damages for loss of society (*Carter v. Chicago & Illinois Midland Ry. Co.* (1988), 168 Ill. App. 3d 652).

In contrast, however, the third division of the First District, in *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1986), 146 Ill. App. 3d 116, expressly held that siblings may recover for loss of companionship. In so holding, the *Sheahan* court reconciled *Prendergast*, stating:

"In *Prendergast*, there was a jury trial. On appeal the first division of this court upheld the trial court's refusal to give instructions including as a matter of damages the loss of compan-

ionship and the loss of inheritance suffered by siblings. The refusal of the instruction could well have been deemed appropriate in view of the evidence adduced as indicated by the record on appeal." (*Sheahan*, 146 Ill. App. 3d at 119.)

The *Sheahan* court's interpretation of *Prendergast* has apparently been accepted by the first division of the First District, as evidenced by that court's following of *Sheahan* in *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923. After reviewing the reasoning behind the above-cited cases, as well as our supreme court's recent decisions in this area, we respectfully disagree with the *Carter* and *Prendergast* decisions and agree with the *Sheahan* and *Singh* courts that the Wrongful Death Act does not bar a decedent's siblings from recovering damages due to loss of companionship or society.

In holding that siblings may not recover for loss of society, the *Carter* court relied on the Seventh Circuit case cited above, which, in turn, relied upon *Prendergast*. The *Prendergast* court cited two reasons for its holding. First, the court noted that Illinois courts have traditionally drawn a distinction, for purposes of recovery under the Act, between lineal and collateral heirs:

"The established rule is that if the wrongful death action is brought for a surviving spouse or lineal next of kin, the law presumes substantial pecuniary damages arising from the relationship alone, and it is immaterial whether they received pecuniary assistance from the deceased in the past. Where, however, the next of kin are collateral heirs, their pecuniary damages are only such *as are proved.*" (Emphasis added.) (*Prendergast*, 128 Ill. App. 3d at 88-89.)

By its own terms, such a distinction does not support the complete bar of siblings' claims for loss of society, but merely requires proof of damages. As the Seventh Circuit noted, the cases relied upon by the *Prendergast* court do not by themselves suggest that the difference between linear and collateral relationships is so great that siblings can never recover for proved loss of society. (*In re Air Crash Disaster*, 771 F.2d at 340.) In this case, of course, decedent's siblings have been denied an opportunity to prove their pecuniary damages.

The *Prendergast* court's second reason for denying recovery for the siblings' loss of society was that our supreme court in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, was cautious in expanding recovery in this particular area of the law. This was also the reason espoused by the Seventh Circuit for its decision. (*In re Air Crash Disaster*, 771 F.2d at 340.) We do not read *Bullard* so restrictively. In *Bullard*, the court held that parents are entitled to a presumption of pecuniary in-

jury in the loss of a child's society. In holding that parents' loss of a minor child's society is included within the scope of pecuniary injury, the court stated:

"In Illinois, *** the trend in our more recent decisions under the Wrongful Death Act has been to expand the scope of pecuniary injury to encompass nonmonetary losses. In *Elliott v. Willis* (1982), 92 Ill. 2d 530, this court quite recently unanimously held, based on a broad definition of pecuniary injury, that a widowed spouse had the right to recover damages for loss of consortium under the Wrongful Death Act. We there relied upon *Hall v. Gillins* (1958), 13 Ill. 2d 26, where the court refused to allow a common law action to recover for 'destruction of the family unit' caused by the death of the father because an adequate remedy already existed under the Wrongful Death Act. This court there stated:

'The term "pecuniary injuries" [found in section 2 of the Wrongful Death Act] has received an interpretation that is broad enough to include most of the items of damage that are claimed by plaintiffs in this case. Each plaintiff alleges deprivation of support *as well as deprivation of the companionship, guidance, advice, love and affection of the deceased.'* (Emphasis added.) 13 Ill. 2d 26, 31.

To the same effect is *Knierim v. Izzo* (1961), 22 Ill. 2d 73, 82-83." *Bullard,* 102 Ill. 2d at 514.

It is true, as the *Prendergast* court noted, that *Bullard* declined to consider whether the loss of society presumption should apply to a child who has attained majority (*Bullard,* 102 Ill. 2d at 517), but we find no reason in this to conclude that a sibling's loss of society cannot constitute pecuniary injury. The limitation in *Bullard* pertained to the *presumption* of substantial loss, not whether damages for loss of an adult child's society can be recovered if *proved.* That issue was simply not before the court. As the *Bullard* court stated, "the trend *** has been to expand the scope of pecuniary injury to [cover such loss]." (*Bullard,* 102 Ill. 2d at 514.) Indeed, the supreme court has continued to extend the scope of pecuniary injury since *Bullard.* In *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, the supreme court expanded upon *Bullard,* holding that the presumption of pecuniary injury in the loss of a child's society is applicable for adult children as well as for minors. (*Ballweg,* 114 Ill. 2d at 120.) In light of this development, we do not believe that the *Bullard* court's "cautious expansion of recovery in this area" (*In re Air Crash Disaster,* 771 F.2d at 340), is a sufficient reason to deny siblings the opportu-

nity to prove and recover damages incurred due to the loss of a sibling's society. In this regard, we note also that, in holding to the contrary, the *Carter* decision makes no mention of *Ballweg's* expansion of *Bullard,* nor does it address the holdings of either *Sheahan* or *Singh.*

In conclusion, we hold that, because the siblings here are decedent's next of kin, and because a next of kin's loss of society is included within the scope of pecuniary injury for purposes of the Wrongful Death Act (*Ballweg,* 114 Ill. 2d at 118; *Bullard,* 102 Ill. 2d at 515; *Elliott v. Willis* (1982), 92 Ill. 2d 530, 541), the trial court erred in entering judgment on the pleadings on the siblings' claims for loss of society. (*Singh,* 165 Ill. App. 3d at 932; *Sheahan,* 146 Ill. App. 3d at 120.) We recognize that *Ballweg* and *Bullard* addressed loss of society as a pecuniary injury only in the parent/child relationship and that *Elliott* dealt with a spouse's loss of society, but we find similar considerations applicable to siblings' claims. Under our society's concept of the family, we see no sufficient reason to differentiate between the deprivation of companionship, guidance, advice, love and affection suffered by brothers and sisters upon the death of a family member from that suffered by parents or children. As the *Sheahan* court noted, although claims for loss of companionship made by next of kin collaterally related may present more problems of pleading and proof than such claims advanced by lineal kindred, this is no reason to deny them. (*Sheahan,* 146 Ill. App. 3d at 120; but see *Carter,* 168 Ill. App. 3d at 660.) Decedent's siblings, having alleged pecuniary injury from loss of society, must be given the opportunity to prove their losses.

The orders granting summary judgment for Edison and dismissing the siblings' claim for loss of companionship are reversed, and this matter is remanded to the circuit court of Du Page County for further proceedings.

Reversed and remanded.

REINHARD and UNVERZAGT, JJ., concur.