MARILEE SEEF *et al.*, Plaintiffs-Appellants, v. FRANK SUTKUS *et al.*, Defendants-Appellees.

First District (6th Division)   Nos. 1—88—1835, 1—88—3180 cons.

Opinion filed October 12, 1990.

Michael W. Rathsack, of Chicago (Philip F. Maher and Stephen E. McLean, of counsel), for appellants.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (D. Kendall Griffith, Diane Cernivivo, and Gerald Haberkorn, of counsel), for appellees.

JUSTICE RAKOWSKI delivered the opinion of the court:

This medical malpractice action arises from the stillbirth of an allegedly viable fetus. Plaintiffs Marilee and Michael Seef, parents of Baby Boy Seef, filed suit against defendants Frank Sutkus, M.D., and Ingalls Memorial Hospital, alleging that the death was caused by negligent failure to monitor the condition of the fetus and timely perform a caesarean section. The amended complaint sought recovery as follows:

(1) On behalf of Marilee Seef, alleging negligent infliction of emotional distress arising from the death of her viable fetus (counts I and II).

(2) On behalf of Michael Seef, for loss of his wife's consortium as a result of her emotional distress (counts III and IV).

(3) On behalf of the estate of Baby Boy Seef, alleging medical malpractice and seeking, as part of the damages claimed, compensation for the parents' loss of the fetus' companionship and society (counts V and VI).

Defendants moved for dismissal of the amended complaint pursuant to section 2—615 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—615). On May 9, 1988, the circuit court dis-

missed counts I through IV and struck those portions of counts V and VI (the wrongful death claim) that sought damages for parental loss of society. Plaintiffs later voluntarily dismissed the remaining portions of the wrongful death counts.

The issues presented on appeal are: (1) whether plaintiffs' amended complaint stated a cause of action for negligent infliction of emotional distress when it did not plead that Mrs. Seef ever feared for her own safety as a result of defendants' negligence, and (2) whether, in a wrongful death action, plaintiffs can claim damages for loss of society of an unborn child. We affirm on the first issue and reverse and remand on the second.

The facts alleged in the complaint are that Marilee Seef was under the care of defendant Sutkus during her pregnancy. On June 9, 1980, Mrs. Seef, 38 weeks pregnant, was admitted to defendant Ingalls Memorial Hospital. At the time of admission to Ingalls, Mrs. Seef complained to Sutkus and to hospital personnel about "changes in the activities and responses of her fetus." At that time, Baby Boy Seef was capable of separate and independent life. Defendants failed to monitor the condition of this unborn child and delayed in performing the caesarean section which would have saved his life. He died on June 10, 1980.

On November 16, 1981, Michael Seef was appointed special administrator of the estate of Baby Boy Seef. In that capacity, he filed a wrongful death action which claimed, among other things, that, as a result of the death of their child, he and his wife sustained damages for the loss of the society of Baby Boy Seef.

The trial court dismissed counts I and II for negligent infliction of emotional distress to Mrs. Seef because the complaint did not plead that she had been within the zone of danger and in fear for her own safety. The court also dismissed counts III and IV, which were derivative counts for loss of consortium suffered by Mr. Seef.

In striking those portions of counts V and VI (the wrongful death claim) that sought recovery for parental loss of society, the court followed the one Illinois case exactly on point at that time, *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, 510 N.E.2d 1324, *appeal denied* (1987), 116 Ill. 2d 555, 515 N.E.2d 108, from the fifth district.

■■ When a court reviews a motion to dismiss on the pleadings, it must accept all well-pleaded facts as true and should not grant the motion unless it is clear that no set of facts can be proved which would entitle the plaintiff to relief. *Ogle v. Fuiten* (1984), 102 Ill. 2d 356, 360-61, 466 N.E.2d 224.

I

The plaintiffs first contend that the trial court erred in dismissing counts I and II (and the derivative counts III and IV) on the ground that plaintiffs did not state a cause of action for negligent infliction of emotional distress when they failed to plead that Mrs. Seef was· ever in the zone of danger for injury as a result of defendants' negligence. We disagree.

For an action in negligence, a plaintiff must plead that: (1) the defendant owed a duty to that particular plaintiff; (2) the defendant breached this duty; (3) the defendant's breach was the proximate cause of injuries to the plaintiff; and (4) these injuries caused damages. (*Horak v. Biris* (1985), 130 Ill. App. 3d 140, 144-45, 474 N.E.2d 13.) Courts generally have been reluctant to allow recovery for a plaintiff who suffered purely mental or emotional distress because such injuries are not easily foreseeable. (*Rickey v. Chicago Transit Authority* (1983), 98 Ill. 2d 546, 555, 457 N.E.2d 1.) Thus, historically, plaintiffs with a cause of action for the negligent infliction of emotional distress had to plead some contemporaneous physical injury or impact to themselves. *Rickey*, 98 Ill. 2d at 553.

In *Rickey*, the Illinois Supreme Court eliminated the impact requirement and substituted a zone-of-danger rule to define the parties to whom the defendant might owe a duty. (*Rickey*, 98 Ill. 2d at 555.) Under this rule, "a bystander who is in a zone of physical danger and who, because of the defendant's negligence, has reasonable fear for his own safety is given a right of action for physical injury or illness resulting from emotional distress." (*Rickey*, 98 Ill. 2d at 555.) Thus, for negligent infliction of emotional distress, a plaintiff must now plead that either (1) he suffered direct impact or (2) he was in a zone of danger that caused him to fear for his own safety and further that he suffered physical injury or illness as a result of his emotional distress. *Courtney v. St. Joseph Hospital* (1986), 149 Ill. App. 3d 397, 403, 500 N.E.2d 703.

Parents of an unborn child are not *ipso facto* in the zone of danger for negligence involving that child. (*Siemieniec v. Lutheran General Hospital* (1987), 117 Ill. 2d 230, 260-62, 512 N.E.2d 691.) Illinois courts have found parents outside the zone of danger when negligent genetic counselling results in the birth of a hemophiliac child (*Siemieniec*, 117 Ill. 2d at 260-62); when hospital personnel allow a newborn to fall off a delivery table (*Villamil v. Elmhurst Memorial Hospital* (1988), 175 Ill. App. 3d 668, 670-72, 529 N.E.2d 1181); and when negligence is a factor in the delivery of a stillborn child (*Hunt* (1987), 158 Ill. App. 3d at 79-80; *Robbins v. Kass* (1987),

163 Ill. App. 3d 927, 930-32, 516 N.E.2d 1023).

On appeal the Seefs contend that they have pled a cause of action for negligent infliction of emotional distress. First, they allege that Mrs. Seef did suffer direct contemporaneous injury because she was still carrying Baby Boy Seef and, since she and her child were a single entity, she was also subject to any treatment he did or did not receive. Second, they claim that the zone-of-danger test does not apply because Mrs. Seef was herself a direct victim of the malpractice, not a bystander. Third, they assert that the zone-of-danger test is satisfied because of the inherently close relation between mother and unborn child.

To support their contention, the Seefs rely on *Corgan v. Muehling* (1988), 167 Ill. App. 3d 1093, 522 N.E.2d 153, and *Hunt*. However, the *Corgan* court decided the zone-of-danger test did not apply when a therapist had engaged in sexual relations with a patient because the plaintiff was suing directly for malpractice against herself, not for emotional distress over the treatment accorded a third party. (*Corgan*, 167 Ill. App. 3d at 1102.) Furthermore, the *Hunt* court stated that the unusual facts of that case may not fall into the zone-of-physical-danger rule contemplated in *Rickey* and then denied recovery for the parents of an unborn child. *Hunt*, 158 Ill. App. 3d at 80.

The Seefs' complaint alleges facts very similar in relevant detail to those of *Robbins*. In that case, plaintiffs sued a hospital after their baby was stillborn while the parents waited for hospital personnel to return to their room and help them. The court denied recovery for negligent infliction of emotional distress on the basis that the zone-of-danger rule allows recovery only if plaintiffs suffer a reasonable fear for their own safety, not if they simply fear for the safety of a third person. *Robbins*, 163 Ill. App. 3d at 930.

The *Robbins* court did not treat the mother and child as a single entity. Nor did that court determine that the mother was, *ipso facto*, in the same zone of danger as her unborn child. Similarly, in this case, plaintiffs have not pleaded that Mrs. Seef feared for her own safety within a zone of danger. Thus, like the plaintiffs in *Robbins*, the Seefs did not plead the elements of negligent infliction of emotional distress.

■ Furthermore, plaintiffs have not pleaded any facts showing a direct injury to Mrs. Seef which could form an alternative to damages based on indirect harm through the death of Baby Boy Seef. See *Dralle v. Ruder* (1988), 124 Ill. 2d 61, 72-74, 529 N.E.2d 209.

For these reasons, we affirm the decision of the trial court in dis-

missing counts I and II, and the derivative counts III and IV, for failure to state a cause of action.

## II

Plaintiffs also contend that the trial court erred in dismissing those portions of counts V and VI which claimed loss of society due to the wrongful death of a viable unborn child.

■ Under the Illinois Wrongful Death Act:

"The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default." (Ill. Rev. Stat. 1987, ch. 70, par. 2.2.)

The Act also provides that "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death." Ill. Rev. Stat. 1987, ch. 70, par. 2.

● 8 Courts have defined the meaning of pecuniary to include marital companionship, parental care, instruction, and many other aspects of family relationships. (*Elliott v. Willis* (1982), 92 Ill. 2d 530, 535-41, 442 N.E.2d 163.) The term does not, however, extend to the grief or mental anguish that family members suffer after a wrongful death. *Elliott*, 92 Ill. 2d at 539.

■ Illinois law has not fully delineated the bases for awarding damages for a wrongful death when a child dies before birth. (Ill. Rev. Stat. 1987, ch. 70, par. 1 *et seq.*) In *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, 304 N.E.2d 88, the Illinois Supreme Court found a cause of action for the wrongful death of a viable child born dead as a result of injuries negligently inflicted *en ventre sa mere*. In *Jones v. Karraker* (1983), 98 Ill. 2d 487, 489-92, 457 N.E.2d 23, the court found that a rebuttable presumption of substantial pecuniary loss was sufficient to support pecuniary damages for the death of a viable fetus, but the court did not specify if those damages included loss of society. In *Bullard v. Barnes* (1984), 102 Ill. 2d 505, 512-18, 468 N.E.2d 1228, the court held that the typical family experience no longer supports the presumption of loss of future earnings at the death of a minor child; instead, courts should presume loss of society. That court held further that defendants could rebut this presumption with evidence that a parent and child were estranged. (*Bullard*, 102 Ill. 2d at 517.) In *Ballweg v. Springfield* (1986), 114 Ill. 2d 107, 118-21, 499 N.E.2d 1373, the court allowed a presumption of damages

for loss of society of an adult child. None of these decisions, however, indicate just when parents begin to enjoy the society of a child or suffer a loss of that society after wrongful death.

Plaintiffs assert that the *Chrisafogeorgis* court drew the proper line for damages in 1973 when it first held that there is a cause of action for the wrongful death of a viable child *en ventre sa mere*. (*Chrisafogeorgis*, 55 Ill. 2d at 374-75.) Since that decision, the 1980 amendment to the Wrongful Death Act extends the cause of action to any fetal death without limiting action to a viable fetus and without specifying the kinds of damages available at stages of fetal development. Ill. Rev. Stat. 1987, ch. 70, par. 2.2.

The relevant facts in this appeal are undisputed. Plaintiffs' complaint alleges that defendants' negligence caused the death of Baby Boy Seef before his birth. Thus, the question on appeal is whether we can affirm as a matter of law that damages under the Wrongful Death Act do not include loss of society for a viable, unborn fetus.

The trial court did so rule, relying on *Hunt v. Chettri*, a fifth district opinion. One Federal case has also followed *Hunt, Denham v. Burlington Northern R.R. Co.* (N.D. Ill. 1988), 699 F. Supp. 1253. *Denham* did not provide any reasoning in support of its decision. It simply followed *Hunt.* Recently, however, the first district has allowed parents of an unborn child to claim damages for loss of society in *Smith v. Mercy Hospital & Medical Center* (1990), 203 Ill. App. 3d 465.

We have carefully considered both *Hunt* and *Smith*, and we agree with the result reached in *Smith*. In so doing we are not unmindful of the reasoning set forth in *Hunt*. However, we do believe for the following reasons that *Smith* is more in accord with the supreme court pronouncements in *Chrisafogeorgis* and the 1980 amendment to the Wrongful Death Act.

The *Hunt* court defined " 'society' " as a term that " 'embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort, and protection.' " *Hunt*, 158 Ill. App. 3d at 78, quoting *Sea-Land Services, Inc. v. Gaudet* (1974), 414 U.S. 573, 585, 39 L. Ed. 2d 9, 21, 94 S. Ct. 806, 815.

Following *Bullard*, the court asserted that a presumption of damages for loss of society can be defeated by evidence of estrangement. (*Hunt*, 158 Ill. App. 3d at 78, citing *Bullard*, 102 Ill. 2d at 517.) This use of evidence, the court reasoned, presumes the existence of a tangible relationship.

The court reasoned further that " '[w]hen children are wrongfully

killed, the parents' investment *** in affection, guidance, security and love is destroyed. Society recognizes the destruction of that value whether a child is a minor or an adult.' " (*Hunt*, 158 Ill. App. 3d at 79, quoting *Ballweg*, 114 Ill. 2d at 120.) When an unborn child dies, however, "no guidance, love, affection or security has been exchanged." (*Hunt*, 158 Ill. App. 3d at 79.) Therefore, the court continued, allowing damages for an unborn child would be tantamount to compensating for mental anguish, which is prohibited under Illinois law in wrongful death cases (*Hunt*, 158 Ill. App. 3d at 79, citing *Bullard*, 102 Ill. 2d at 514-15; *Elliott*, 92 Ill. 2d at 539).

The court acknowledged that the loss suffered by parents could be virtually identical when a child is stillborn or dies immediately after birth. Nevertheless, the court held that the point to begin measuring loss-of-society damages is with bonding at birth, when, in the court's view, a mutual relationship begins. *Hunt*, 158 Ill. App. 3d at 79.

To support this ruling, the *Hunt* court first stated it failed "to see how a defendant could produce evidence establishing that a parent and an unborn child were estranged." (158 Ill. App. 3d at 78.) The court's inability to see evidence of estrangement may arise because in most instances such evidence does not exist. While we agree that it may be difficult to prove that a mother was estranged from her unborn child, we fail to see how this fact either leads to the conclusion that no tangible relationship ever existed or somehow dictates a consequent inability to bring a cause of action based on that relationship. *Chrisafogeorgis* (55 Ill. 2d at 372), held that "[t]he right to bring an action is clearly distinguishable from the ability to prove the facts. The first cannot be denied because the second may not exist." Certainly it follows from this statement that a cause of action should not be denied because of the defendant's inability to prove facts which could defeat the claim.

The *Hunt* court conceded the existence of a relationship between parents and a *newborn* child. (158 Ill. App. 3d at 79.) Yet the problems of proving estrangement are just as severe in that instance as in the case of an unborn. Moreover, there are arguments available to defendant besides the presence of estrangement. A defendant could show, among other things, that a pregnant woman had endangered the unborn child through alcohol or drug abuse, or simply neglecting her own health. As *Smith* notes:

> "[A] rebuttable presumption of pecuniary injuries does not necessarily guarantee recovery. It does, however, appropriately shift the burden of coming forward with proof that the dam-

ages are minimal or nonexistent onto the party who created the uncertainty surrounding the damages by causing the wrongful death." *Smith*, 203 Ill. App. 3d at 477, citing *Flynn v. Vancil* (1968), 41 Ill. 2d 236, 242 N.E.2d 237.

The *Hunt* court also relies on the special concurrence in *Bullard* (102 Ill. 2d at 521). In that case, Justice Clark argued that the loss-of-society presumption should be extended to the parents of adult children. In support of this he stated the parents of the 17-year-old "could reasonably anticipate receiving advice, companionship and assistance" and that "[t]his presumption is equally valid for adult *** children." The supreme court later held in favor of this presumption for the loss of adult children in *Ballweg* (114 Ill. 2d at 118-20). The *Hunt* court said that parents of an unborn child could not make such a claim. We agree. But neither could the parents of a newborn. And yet, under existing law, loss of society for the newborn is not only allowed, but presumed. The *Smith* court notes further that loss-of-society damages compensate plaintiffs for their future loss, not for their past enjoyment. *Smith*, 203 Ill. App. 3d at 473.

Next, *Hunt* held that recognition for loss of society is dependent on "the relationship of parent and child. In the death of an unborn fetus, no guidance, love, affection or security has been exchanged." (158 Ill. App. 3d at 79.) The *Hunt* court therefore concluded that any award to the parents of an unborn could only be for mental anguish or bereavement, which are not elements of loss of society. This reasoning presupposes that a child has no society with his parents *in utero* but acquires society suddenly through "the initial bonding which takes place at birth." (158 Ill. App. 3d at 79.) Thus, one minute distinguishes the fetus who does not exchange society with his parents from the child who does. While, this may be true, other courts have noted that this distinction can lead to " 'bizarre results. Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of the one and not for that of the other?' " *Chrisafogeorgis*, 55 Ill. 2d at 374, quoting *Stidam v. Ashmore* (1959), 109 Ohio App. 431, 434, 167 N.E.2d 106, 108.

We therefore cannot agree that as a matter of law a child does not develop any love or affection for his parents during the months before birth, but develops these feelings toward both immediately afterwards. While we agree that there would be differences between how an unborn may relate to a mother as opposed to a father, we believe in both instances that the existence and extent of these

relationships are properly questions of fact requiring medical expertise and should not be decided as a matter of law.

Finally, *Hunt* would measure the loss experienced by the parents according to the "length, intensity and quality of the parent-child relationship" and states that "birth is [the] proper point ***, to begin to measure the loss of a child's society." (*Hunt*, 158 Ill. App. 3d at 29.) We believe that at best this is properly characterized as an unproven factual question. Long before birth parents may soothe, comfort, and even talk to their child. How or even if the child relates to these actions will determine whether or not society exists from child to parent. We do not believe that these questions should be decided as a matter of law without giving plaintiffs the opportunity to present evidence. It may very well be that plaintiffs will be unable to garner such evidence and defendant will be entitled to summary judgment. It could also be that conflicting evidence will be produced and the issue will then be a question for the trier of fact. Further, if the child's capacity for bonding and society depends on social development, then one might argue that no society exists for a child who dies after birth but before meeting his father. If society depends on physical maturation, then one might argue that a nearly full-term child who dies just before birth, as the infant did here, has a greater capacity for society than a six- or seven-month-old fetus who survives birth but dies soon after. We are not prepared to rule on such factual issues as a matter of law.

For the reasons stated, the judgment of the trial court is affirmed on counts I through IV and reversed and remanded on counts V and VI.

Judgment affirmed in part and reversed in part.

LaPORTA, P.J., and McNAMARA, J., concur.