(Nos. 71115, 71118 cons.—

MARILEE SEEF *et al.*, Appellees, v. FRANK SUTKUS
*et al.*, Appellants.

*Opinion filed November 21, 1991.*

BILANDIC, J., took no part.
MILLER, C.J., specially concurring.

William L. Barr, Jr., and Lawrence M. Gavin, of Bell,
Boyd & Lloyd, and D. Kendall Griffith, Diane Cernivivo
and Gerald Haberkorn, of Hinshaw, Culbertson, Moel-
mann, Hoban & Fuller, all of Chicago, for appellant
Frank Sutkus.

Lord, Bissell & Brook, of Chicago (Judy Platt
Perlman, Hugh C. Griffin and Diane I. Jennings, of
counsel), for appellant Ingalls Memorial Hospital.

Michael W. Rathsack, of Chicago (Philip F. Maher and
Stephen E. McLean, of counsel), for appellees.

Todd A. Smith, of Corboy & Demetrio, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE HEIPLE delivered the opinion of the court:

This medical malpractice action arises from the stillbirth of a 38-week-old viable fetus. Plaintiffs Marilee and Michael Seef, the parents of Baby Boy Seef, brought suit in the circuit court of Cook County under the Wrongful Death Act (Ill. Rev. Stat. 1989, ch. 70, par. 1 *et seq.*) against defendants Frank Sutkus, M.D., and Ingalls Memorial Hospital, alleging that the death was caused by negligent failure to monitor the condition of the fetus and timely perform a caesarean section. The circuit court dismissed that portion of the plaintiffs' complaint seeking damages for parental loss of society. The appellate court reversed. (205 Ill. App. 3d 312.) This court granted the defendants' petitions for leave to appeal solely on the issue of whether there can be recovery for loss of society of a stillborn child.

We are persuaded that both the language of the Wrongful Death Act and existing Illinois case law support a finding that parents may maintain a cause of action to recover damages for the loss of their stillborn child's society. The Illinois Wrongful Death Act permits an action for damages whenever the death of a person is caused by a wrongful act or neglect and if the person injured, had he survived, could have brought an action for damages. (Ill. Rev. Stat. 1989, ch. 70, par. 1.) The Act further provides that "the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death." (Ill. Rev. Stat. 1989, ch. 70, par. 2.) The Act additionally states in relevant part as follows:

"§2.2. The state of gestation or development of a human being when an injury is caused, when an injury takes effect, or at death, shall not foreclose maintenance of any cause of action under the law of this State arising from the death of a human being caused by wrongful act, neglect or default." (Ill. Rev. Stat. 1989, ch. 70, par. 2.2.)

Thus, under the Wrongful Death Act an unborn fetus is recognized as a "person" and parents may recover damages for "pecuniary injuries" resulting from the death of the unborn fetus.

Illinois law has recognized that pecuniary losses encompass loss of society damages for many facets of family relationships. (*Elliot v. Willis* (1982), 92 Ill. 2d 530.) Further, this court in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, held that parents of a wrongfully killed minor child are entitled to a presumption of injury in the loss of the child's society. We find no valid reason or distinction to deny similar recovery for the death of a viable fetus.

In *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, this court recognized that the Wrongful Death Act gives parents the right to maintain an action for damages for the negligently caused death of a viable fetus. In so holding, the court in *Chrisafogeorgis* quoted from the case of *Stidam v. Ashmore* (1959), 109 Ohio App. 431, 434, 167 N.E.2d 106, 108, which stated:

"We are unable to reconcile the two propositions, that if the death occurred after birth there is a cause of action, but that if it occurred before birth there is none. ***

Such a distinction could lead to bizarre results. Suppose, for example, viable unborn twins suffered simultaneously the same prenatal injury of which one died before and the other after birth. Shall there be a cause of action for the death of the one and not for that of the other? Surely logic requires recognition of causes of action for the deaths of both, or for neither."

Likewise, logic requires that if we allow loss of society damages for infants, we allow such damages where the nearly full-term child dies before birth. Thus, we hold that a rebuttable presumption for loss of society exists for the wrongful death of a stillborn child.

Accordingly, we affirm the judgment of the appellate court.

*Judgment affirmed.*

JUSTICE BILANDIC took no part in the consideration or decision of this case.

CHIEF JUSTICE MILLER, specially concurring:

I concur in the judgment of the court. I write separately, however, to analyze the conflicting lower court decisions on the question presented and to explain my reasons for joining in the majority opinion.

In *Chrisafogeorgis v. Brandenberg* (1973), 55 Ill. 2d 368, this court first recognized the right of parents to maintain a cause of action for the wrongful death of a stillborn child. The court determined that viability—the ability of the child to remain alive separate from its mother—was the "critical stage" at which the death of a "person" could be brought within the meaning of the Wrongful Death Act. (*Chrisafogeorgis*, 55 Ill. 2d at 374-75.) In 1980, the legislature amended the Act by adding section 2.2, which eliminates the viability requirement of *Chrisafogeorgis*. (See Ill. Rev. Stat. 1989, ch. 70, par. 2.2.) Neither *Chrisafogeorgis* nor section 2.2, however, addresses the nature of damages available in an action for the wrongful death of an unborn fetus. Thus, neither compels the conclusion that parents may recover damages for loss of a stillborn child's society.

Under the Act, spouses and next of kin may recover damages for pecuniary injuries resulting from wrongful death. (Ill. Rev. Stat. 1989, ch. 70, par. 2.) This court in

certain cases has interpreted the term "pecuniary injuries" to include deprivation of the deceased's companionship, guidance, advice, love and affection. In *Elliott v. Willis* (1982), 92 Ill. 2d 530, the court held that these items of damage, known as loss of society, are compensable pecuniary injuries in a widow's action for the wrongful death of her husband. Likewise, in *Bullard v. Barnes* (1984), 102 Ill. 2d 505, the court held that parents of a wrongfully killed minor child may recover for loss of the child's society. In *Elliott* and *Bullard*, as well as in *Ballweg v. City of Springfield* (1986), 114 Ill. 2d 107, which involved the wrongful death of an adult child, this court recognized a presumption of lost society by reason of the wrongful death of a spouse or child.

Thus, the majority correctly states that "Illinois law has recognized that pecuniary losses encompass loss of society damages for many facets of family relationships." (145 Ill. 2d at 338.) Nevertheless, this court has never held that because loss of society falls within the scope of pecuniary injuries, it is always compensable. Rather, it has proceeded on a case-by-case basis when determining whether plaintiffs may recover damages for this type of pecuniary injury. If pecuniary injuries included loss of society in every action brought under the statute, it would not have been necessary, after *Elliott*, to decide the issue presented in *Bullard*. To further illustrate the point, I note that although siblings may recover damages for pecuniary injuries resulting from wrongful death, this court has not yet decided whether they may recover damages for loss of society. Compare *Moss v. Whitaker* (1991), 214 Ill. App. 3d 89 (no recovery), *appeal allowed* (1991), 141 Ill. 2d 544, with *Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344 (recovery).

Because loss of society is an element of pecuniary injury for which compensation need not always be allowed, it does not inevitably follow from *Elliott, Bullard* or

*Ballweg* that parents may recover damages for loss of a stillborn child's society. The conflicting opinions of our appellate court demonstrate the division on the issue presented in this case.

In *Hunt v. Chettri* (1987), 158 Ill. App. 3d 76, the appellate court, fifth district, held that parents may not recover damages under the Act for loss of a stillborn child's society. In support of its decision, the court noted that presumed damages for loss of a minor child's society may be rebutted by evidence that the parent and child were estranged. (*Hunt,* 158 Ill. App. 3d at 78, citing *Bullard,* 102 Ill. 2d at 517.) The court expressed concern that a presumption of lost society would be irrebuttable in the case of an unborn child because defendants would not be able to produce evidence of estrangement. (*Hunt,* 158 Ill. App. 3d at 78.) It therefore concluded that a tangible relationship between parent and child is required before damages for lost society may be recovered. The court reasoned that the rationale for recognizing loss of society damages in *Bullard* and *Ballweg* depended on "the relationship of parent and child," and that no relationship exists between parents and an unborn fetus because "no guidance, love, affection or security has been exchanged. While parents may love and have affection for an unborn child, the child cannot be said to have returned such affection." *Hunt,* 158 Ill. App. 3d at 79.

*Hunt* thus adhered to the idea that society must be exchanged or returned before it can be "lost." In essence, the court believed that unless there is a mutual, reciprocal relationship between parent and child, parents have not suffered loss of society when a child dies before birth because they cannot be said to have lost something that did not exist.

The appellate court, first district, rejected this view in *Smith v. Mercy Hospital & Medical Center* (1990),

203 Ill. App. 3d 465. The *Smith* court held that loss of a stillborn child's society is an element of pecuniary injury under the Act for which parents may recover damages. (203 Ill. App. 3d at 479.) In doing so, the court noted:

"[E]ven if there were no existing societal bond between a mother and her unborn child at the time of injury or death, the Act by its very nature contemplates compensating parents for their *future* loss caused by defendant's negligence or wrongful act. Contrary to *Hunt*, the parents' right to recovery for loss of society does not depend upon whether there has been an exchange of society in the past. \*\*\* Rather, it depends upon whether *but for* defendant's negligence society *would have been* exchanged. \*\*\* [T]hat there may have been no society in the past is irrelevant; it is the loss into the future which is compensable." (Emphasis in original.) *Smith*, 203 Ill. App. 3d at 475.

I agree with *Smith*'s rejection of *Hunt*'s mutuality requirement. In contrast to *Hunt*, I find nothing in our wrongful death jurisprudence that limits recovery for loss of society to cases in which the deceased previously has returned the plaintiff's love and affection. Certainly, nothing in *Bullard* or *Ballweg* requires that a parent and child consciously communicate or exchange affection before compensation may be had for loss of society as an element of pecuniary injury. (See Wunsch, *Parental Recovery for Loss of Society of the Unborn: The Plaintiff's Perspective*, 77 Ill. Bar. J. 538, 541 (1989).) On the contrary, as *Smith* and the appellate court below recognized, damages for loss of society compensate plaintiffs for their loss of future companionship, not for the society that may have been enjoyed in the past. (See 205 Ill. App. 3d 312, 321.) The very purpose of the Wrongful Death Act is to provide next of kin with the benefits that "would have been received from the continued life of the decedent." *Elliott*, 92 Ill. 2d at 540.

Thus, *Hunt*'s analysis is flawed because the court failed to recognize that the damages allowed are for prospective loss of society. Where the loss is real, it does not matter to the existence of a cause of action that the elements of society were not previously returned by the person who suffered the deprivation. The cause of action is for damages sustained by reason of the survivor's loss of the decedent's society, not merely for the survivor's lost opportunity to provide society to the decedent. Further, it is no defense to the right of recovery that the defendant, by causing death before birth, has diminished or eliminated his ability to rebut a presumption of pecuniary loss.

The court in *Hunt*, expanding on its requirement of an existing relationship, found that because "initial bonding" takes place between mother and child at birth, loss of society should be measured from that point. (*Hunt*, 158 Ill. App. 3d at 79.) "Initial bonding," however, does not sufficiently distinguish the loss suffered by a parent whose child is stillborn from the loss experienced by one whose child is born alive but dies an instant later. When a child dies, future companionship and the other elements of society are lost. When an unborn child dies, the loss is the same. When a parent loses a child's anticipated companionship and society, "the deprivation does not necessarily relate to the child's birth. *** To the deprived parent the loss is real either way." *Dunn v. Rose Way, Inc.* (Iowa 1983), 333 N.W.2d 830, 833 (allowing parents of stillborn child to recover for loss of society under State rule of civil procedure).

The *Hunt* court believed that the "length, intensity and quality of the parent-child relationship are determinative of the loss experienced by the parent." (*Hunt*, 158 Ill. App. 3d at 79.) I agree with *Smith* that "there may be a quantitative but not a qualitative difference between the damage caused by the death of a newborn and

that of a viable fetus." (*Smith*, 203 Ill. App. 3d at 481-82.) While consideration of the "length, intensity and quality of the parent-child relationship" may in some cases be useful in measuring the magnitude of the parents' loss, it does not determine whether a loss has occurred. The factors recited by *Hunt* relate to the amount of damages, not to the right of recovery.

The defendants in *Smith*, like appellants here, argued that damages for loss of a stillborn child's society are unduly speculative as a matter of law. A similar argument was rejected in *Chrisafogeorgis*, where this court concluded that the difficulty of ascertaining damages should not bar the cause of action. (*Chrisafogeorgis*, 55 Ill. 2d at 371.) The court further noted that difficulties in determining damages in the case of a stillborn child cannot be deemed greater or different in character from those attending the determination of damages in the case of an injured child who lives but a moment after birth. (*Chrisafogeorgis*, 55 Ill. 2d at 372.) While damages for loss of society are not as susceptible to in-depth analysis and calculation as future earnings, they are "not immeasurable," and a jury is capable of assigning monetary value to this element of pecuniary injury. (*Elliott*, 92 Ill. 2d at 539-40.) Moreover, parents should not be denied damages for loss of their stillborn child's society simply because the timing of defendant's wrongful act has made damages more difficult to prove or disprove. (*Smith*, 203 Ill. App. 3d at 478.) " '[I]t is not the privilege of him whose wrongful act caused the loss to hide behind the uncertainties inherent in the very situation his wrong has created.' " *Elliott*, 92 Ill. 2d at 540-41, quoting *Wycko v. Gnodtke* (1960), 361 Mich. 331, 339-40, 105 N.W.2d 118, 122-23.

For these reasons, I believe the court's decision in this case is a proper extension of our earlier holdings in *Elliott*, *Bullard*, and *Ballweg*. I therefore agree with the

majority that parents may seek damages for loss of society, and that they are entitled to a presumption of such pecuniary injury, in an action for the wrongful death of a stillborn child.