WILLIAM D. ICENOGLE, Plaintiff-Appellant, v. FRANK L. MYERS *et al.*, Defendants-Appellees.

Third District No. 3—87—0367

Opinion filed March 9, 1988.

Dean A. Stone, of March & McMillan, of Macomb, for appellant.

Jeffrey W. Jackson, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee Illinois Power Company.

James J. Elson, of James J. Elson, Chartered, of Canton, for appellee Frank L. Myers.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On March 24, 1986, William D. Icenogle filed a four-count complaint in the circuit court of McDonough County against Frank L. Myers and Illinois Power Company (Illinois Power). Plaintiff filed an amended complaint May 30, 1986, after the court granted Illinois Power's motion to dismiss count IV. Counts I, II, and III were dismissed on Myers' motion July 24, 1986. Thereafter, plaintiff filed a second-amended complaint August 15, 1986. On February 23, 1987, Myers moved for summary judgment on the first three counts pursuant to section 2—1005 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005). Illinois Power filed its motion for summary judgment as to count IV February 25, 1987. The trial court granted both motions May 14, 1987. Plaintiff appeals, contending the trial court erred in finding defendants had no legal duty. We affirm.

Plaintiff was an employee of William Woerly, a contractor who was hired to paint several buildings owned by Myers, including the metal grain storage bin. He was injured September 18, 1985, when part of a wand applicator used to paint that bin came into contact with a 7,200-volt power line controlled by Illinois Power. Plaintiff makes no claim of error in regard to the summary judgment as to count I, which alleged a cause of action against Myers based on the Structural Work Act (Ill. Rev. Stat. 1983, ch. 48, pars. 60 through

69). Count II of the complaint as amended alleged Myers failed to exercise reasonable care as required by section 2 of the Premises Liability Act (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 302), in that he failed to warn the power lines were not insulated, failed to notify workers to request line protectors, built the storage bin too close to the power lines, failed to advise persons of "the hazards of the power lines," and failed to disclose hidden defects in the property. Count III alleged Myers breached the common law duty of ordinary care owed to a business invitee, but is otherwise identical to count II.

Count IV of the complaint alleged Illinois Power negligently constructed its lines too close to the bin, failed to insulate or properly maintain the lines, failed to notify persons near its lines to request line protectors or that they should request line protectors, and failed to properly inspect when it knew or should have known its lines were within 15 feet of a building "accessible to pedestrians," in violation of section 305.20 of the Illinois Administrative Code (Code) (83 Ill. Adm. Code 305.20 (Supp. 1986)), in which the Illinois Commerce Commission (ICC) incorporated by reference certain portions of the National Electrical Safety Code (NESC) relating to power line clearances. See National Electrical Safety Code (Institute of Electrical and Electronic Engineers (1984 ed.)) (NESC as approved July 15, 1983, by the American National Standards Institute).

Myers' motion for summary judgment asserted no genuine issue of material fact existed as Myers had no duty, under either the Premises Liability Act or common law negligence principles, to protect plaintiff from the obvious danger posed by the presence of the wires. Attached to Myers' motion were statements made to an agent of Illinois Power by plaintiff and his employer, William Woerly. Also submitted was a diagram of the accident site made October 2, 1985.

Illinois Power's motion for summary judgment claimed the company had no duty to warn plaintiff of an obvious danger and that, as a matter of law, only a 10-foot clearance between the roof and wires was required by the NESC because the building was not "accessible to pedestrians" under the NESC definition. Attached to the motion were excerpts from the depositions of plaintiff, Woerly, and Myers. Also attached was an affidavit by William Bloch of Illinois Power, stating the closest point between the wires and the crown of the roof on the date of the occurrence measured 12 feet.

Plaintiff filed a response in opposition to Illinois Power's motion, attaching a photograph of the storage bin, which showed a ladder-like progression of rungs mounted on the cone-shaped roof. Also sub-

mitted was the photographer's affidavit authenticating the photographs. In granting the motions for summary judgment, the trial court found no genuine issue of material fact existed and that "[n]either defendant has breached any legal duty owed the Plaintiff."

■ Summary judgment should be granted only when the pleadings, depositions, and admissions, together with any affidavits, show there is no genuine issue as to a material fact, and that the movant is entitled to a judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005(c); see *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) The court has a duty to construe evidence strongly against movant and liberally in favor of opponent. *Stringer v. Zacheis* (1982), 105 Ill. App. 3d 521, 522, 434 N.E.2d 50, 52.

Plaintiff's deposition shows Woerly employed plaintiff to paint several buildings on the Myers property, including the storage bin. Plaintiff used a fiberglass ladder supplied by Woerly to climb to the roof. From there, plaintiff reached the top of the bin by means of the ladder mounted on the roof. Plaintiff stated he used the spray wand paint applicator for the first time on the bin. He had previously read the instructions to the applicator, which cautioned against contact with electrical equipment. Plaintiff stated he saw the wires and said he knew there could be current running through them. He could not recall what happened between the time he began painting on the top of the roof and the time he regained consciousness on the ground.

Woerly testified at his deposition a metal ladder was permanently attached to the roof of the bin. He stated he warned plaintiff twice from his observation point on the ground about getting too close to the wires. Either the paint hose attached to the wand or the wand itself came into contact with the wires. Plaintiff was facing the wires at the time the accident occurred.

Myers' deposition testimony indicated he was not on the premises when the accident occurred. He stated the only way to get up to the roof was to place a ladder on the side of the bin. There was no ladder inside the bin.

The affidavit of William Bloch, a claims adjuster for Illinois Power, stated the minimum distance from the crown of the roof to the wires was 12 feet. Bloch's affidavit referred to a drawing of the storage bin dated October 2, 1985, which was not attached to the affidavit, but which was submitted with Myers' motion for summary judgment.

We turn first to the counts against Myers. Count III alleges a

breach of the duty of ordinary care under principles of common law negligence applicable to a business invitee. Count II alleges a breach of the duty of reasonable care under the circumstances as imposed under the Premises Liability Act (Act) (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 300 *et seq.*). The counts are otherwise identical. We note the Act did not alter the common law duty owed to an invitee, but abolished the distinction between the duty owed to invitees and licensees by an owner or possessor of land. (Ill. Rev. Stat., 1984 Supp., ch. 80, par. 302.) It is apparent from the face of the complaint as amended that plaintiff is alleging in each count that he was an invitee. Thus, defendant's alleged duty to plaintiff under each count was to exercise ordinary care. Accordingly, we will consider the two counts together.

■ This issue is controlled by the principles articulated by the supreme court in *Genaust v. Illinois Power Co.* (1976), 62 Ill. 2d 456, 343 N.E.2d 465. In *Genaust*, a plaintiff brought an action for injuries sustained when power from nearby lines arced to a tower and antenna he was installing. The court affirmed the dismissal of the count against the landowner, which alleged a duty of the possessor to exercise ordinary care for the safety of the business invitee. That plaintiff alleged the landowner negligently failed to warn of the uninsulated condition of the power wires, ordered construction of the tower and the antenna too close to the wires, and failed to provide a safe place to work. That plaintiff argued the landowner concealed the danger of electricity arcing from uninsulated, high-voltage wires to a metal tower and antenna. He asserted that the landowner had actual or constructive knowledge that the power wires passed close to the premises and that the wires were uninsulated.

The court declined to find a duty on the part of the landowner to discover the danger of electrical arcing that existed by the presence of the power wires which were neither on its property nor under its control. The court noted the liability of a possessor of land is based upon failure to expect that the invitee will not discover or realize the danger. The court stated since plaintiff contracted with the landowner to furnish and install the equipment, and represented he had sufficient knowledge to safely perform, it followed that the landowner "considered the presence of the wires" and had no basis to expect plaintiff not to realize the dangers inherent in the installation of a metal tower and antenna in close proximity to power wires. *Genaust*, 62 Ill. 2d at 469, 343 N.E.2d at 472.

The court also noted the plaintiff failed to allege the wires were hidden or concealed. The court stated the dangerous nature of elec-

tricity was common knowledge, as was the fact that any line or wire carrying electricity was dangerous. It ruled a business invitee "must be held to be equally aware of all the obvious and normal hazards incident to the premises as the possessor of the land." *Genaust*, 62 Ill. 2d at 469, 343 N.E.2d at 472.

Here, neither count II nor count III alleges the power lines were on or over Myers' land. Myers' counsel stated at the hearing on the motions for summary judgment the wires were alongside Myers' property, not on it. Plaintiff has produced no evidence to indicate otherwise. Plaintiff alleged Myers failed to disclose hidden defects in the property, but there is nothing in the record to support this contention. The evidence shows plaintiff saw the wires near the storage bin, and he was aware current might be running through them. Under *Genaust*, the danger created by the wires was open and obvious, and Myers had no duty toward plaintiff.

■ We disagree with plaintiff's reliance on *Shaffer v. Mays* (1986), 140 Ill. App. 3d 779, 489 N.E.2d 35. In *Shaffer*, plaintiff fell into a hole while moving heavy trusses during the remodeling of a home. The reviewing court rejected defendant's claim that he had no duty of care. Based on sections 343 and 343A of the Restatement (Second) of Torts (Restatement (Second) of Torts §§343, 343A (1965)), the court ruled the evidence showed the owner had reason to expect plaintiff was likely to be distracted during the work and fall into the hole. Moreover, in *Shaffer*, it was obvious to the landowner that the injured party would be likely to be walking over the hole. Here, there was no evidence indicating Myers was aware that painting on the structure would involve a long wand that might come in contact with the wire. We find the trial court correctly granted summary judgment in Myers' favor as to counts II and III.

We reach the same conclusion with respect to count IV against Illinois Power. Courts look to the facts and circumstances of each case in analyzing whether a power company owes a duty to a person who comes in contact with electrical transmission wires. In *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665, the reviewing court ruled defendant had a duty to insulate its lines which ran along a public street. The court found it foreseeable that the sewer construction workers or the machinery they used for laying or making repairs to sewers along that street would be close to defendant's uninsulated wires, which were 20 feet from the ground.

In *Austin v. Public Service Co.* (1921), 299 Ill. 112, 132 N.E. 458, a 13-year-old boy was killed when he touched a wire stretched above a public bridge upon which he climbed. The court ruled that

while defendant had no duty to insulate its entire system, it was foreseeable that municipal employees would climb a public bridge to paint or repair it. A duty to warn was found where it could be reasonably anticipated that workers would make repairs to the roof of a private building where the wires were located a few feet from the roof and when the wires were covered with a weatherproofing material undistinguishable from insulation. *German v. Illinois Power Co.* (1983), 115 Ill. App. 3d 977, 451 N.E.2d 903.

In *Nelson v. Commonwealth Edison Co.* (1984), 124 Ill. App. 3d 655, 465 N.E.2d 513, the court ruled it was not objectively unforeseeable that a 10-year-old child playing in a public park would toss a copper wire near overhead, high-voltage, uninsulated power lines. However, it was not reasonably foreseeable that a 15-year-old boy would come in contact with a clearly visible and unobstructed wire suspended 22 feet over his family's yard. (*Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 344 N.E.2d 509.) It was held not foreseeable that a person would climb a utility pole to ascertain a service number, especially when the power company told the plaintiff it would send out an employee to find it. *Rowe v. Illinois Power Co.* (1987), 154 Ill. App. 3d 174, 506 N.E.2d 975.

■ Plaintiff's reliance on the violation of ICC rules is of no benefit to him. Although violation of a safety statute, ordinance or regulation having the force of law is *prima facie* evidence of negligence, it is not negligence *per se*. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 356 N.E.2d 93.) We find no violation occurred. The ICC adopted as its rules, *inter alia*, part 2 of the NESC, *Safety Rules for the Installation & Maintenance of Overhead Electric Supply & Communication Lines* (see National Electrical Safety Code §§20 through 28, at 131-295 (1984 ed.)). Subsection 234 of part 2 as applied to this case essentially requires the diagonal clearance between wires and buildings or other structures to equal the vertical clearance. (National Electrical Safety Code part 2, §23, subsection 234, at 180 (1984 ed.).) The vertical clearance necessary for a 7,200-volt line is 10 feet for roofs or projections not accessible to pedestrians and 15 feet for balconies and roofs accessible to pedestrians. (National Electrical Safety Code part 2, §23, subsection 234, at 182-83 (table 234—1) (1984 ed.).) A roof is considered accessible to pedestrians if the means of access is through a doorway, ramp, stairway, or permanently mounted ladder. (National Electrical Safety Code part 2, §23, subsection 234 (table 234—1); subsection 234, at 182-83 n.3 (1984 ed.).) The evidence here shows a permanently mounted ladder on the roof. However, it is undisputed plaintiff was required to place a lad-

der against the bin in order to reach the roof, which was 15 feet 7 inches from the ground. Therefore, we find the roof was not accessible to pedestrians and the minimum clearance of 10 feet was met by Illinois Power.

■ Here, although the existence of the ladder suggests it is foreseeable someone would be on the roof, it is not reasonably foreseeable that someone standing on the crown, holding a paint applicator, would come into contact with power lines 12 feet away.

Like the power lines in *Clinton*, the wires in this case were open and obvious. Here, they were located in a rural area. Plaintiff did not allege the wires were hidden or covered with weatherproofing that looked like insulation. The fact more clearance existed here than was required by the NESC is a further indication that it would not be reasonably foreseeable plaintiff would come into contact with the wires.

■ The existence of a duty is not dependent on foreseeability alone but on other factors such as the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing the burden on the defendant. (*Lance v. Senior* (1967), 36 Ill. 2d 516, 224 N.E.2d 231; *Quinn v. Sigma Rho Chapter* (1987), 155 Ill. App. 3d 231, 507 N.E.2d 1193.) Plaintiff asserts the lines should have been insulated near the bin. We are unaware of the practice of insulating transmission lines traversing a rural area. The minimal risk of injury here does not justify the imposition of such a heavy burden on the electrical business or the public, which will undoubtedly bear the ultimate cost. *Clinton v. Commonwealth Edison Co.* (1976), 36 Ill. App. 3d 1064, 344 N.E.2d 509.

Accordingly, we affirm the decision of the circuit court of McDonough County.

Affirmed.

McCULLOUGH and LUND, JJ., concur.