KAREN TINDER, as Adm'x of the Estate of William L. Tinder, Plaintiff-Appellant, v. ILLINOIS POWER COMPANY, INC., n/k/a Illinois Power, Defendant-Appellee.

Fourth District    No. 4—00—0916

Argued April 24, 2001.—Opinion filed October 23, 2001.

Joseph A. McCarron and James P. Ginzkey (argued), both of Hayes, Hammer, Miles, Cox & Ginzkey, of Bloomington, for appellant.

Christopher L. Nyweide (argued), of Livingston, Barger, Brandt & Schroeder, of Bloomington, for appellee.

JUSTICE COOK delivered the opinion of the court:

In July 1998, plaintiff, Karen Tinder, filed a one-count complaint against defendant Illinois Power Company, Inc., now known as Illinois Power (Illinois Power), alleging that Illinois Power was liable for injury to and the death of decedent, William L. Tinder, pursuant to the Wrongful Death Act (740 ILCS 180/2.1 (West 1994)). The trial court granted summary judgment to Illinois Power, concluding that Illinois Power had no duty to insulate its power lines and had no further duty to protect decedent under the circumstances of this case. Plaintiff appeals. We affirm.

## I. BACKGROUND

Decedent owned a residence in Danville, with a detached garage on the alley. On July 31, 1996, decedent and Donald Delva attempted to take down a citizens band (CB) antenna attached to the garage. Decedent was electrocuted when the antenna contacted overhead power lines owned by Illinois Power.

Illinois Power's lines were located in the alley behind the garage. The lines were clearly visible and unobstructed. The highest line was an uninsulated primary line. Below that line were three 120/240 volt lines. Illinois Power denies that those lines were insulated. The affidavit of William DeWitt, an electrical engineer, however, states that he examined the lines after the incident and "the 120/240 power lines [were] covered by a degraded insulating material." For purposes of this appeal, we assume that DeWitt is correct.

Delva testified that he and decedent discussed how they needed to keep the antenna away from the power lines in the alley because it would be dangerous if the antenna hit the power lines. Decedent and his son, William D. Tinder, had erected the antenna approximately a year earlier. Decedent believed the antenna, 51 or 52 feet tall, had to be located higher than the power lines to improve reception. Tinder and decedent talked about the electrical lines in the alley and the fact that those lines should be avoided because if the antenna "even slipped, one of us could have [gotten] hurt." Tinder testified he and decedent understood that they could be shocked or electrocuted and that was the reason they avoided raising the antenna going east to west.

The neighbors across the alley, the Taylors, owned a garage that had burned in 1990 or 1991. Their garage was about 15 feet from decedent's garage. The fire reached as high as the power lines, and Illinois Power sent a serviceman to look at the lines, who said they did not need to be replaced. Illinois Power did not do anything to change the condition of the power lines during the five years before the incident.

Plaintiff's complaint alleged that Illinois Power failed to properly insulate, guard, protect, and maintain the lines; failed to repair the lines after the garage fire; violated its own internal policies regarding inspection and repair of damaged insulated wire; permitted the insulation to become worn, rotten, or burned; and failed to provide adequate warnings of damaged insulated wire.

## II. ANALYSIS

■ The purpose of summary judgment is not to try a question of fact but to determine whether one exists. *Ferguson v. McKenzie*, No. 89144, slip op. at 3 (January 29, 2001). Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1998). In an appeal from the grant of summary judgment, review is *de novo*. *Ferguson*, slip op. at 3.

■ Whether a duty exists in a particular case is a question of law to be determined by the court. *Ward v. K mart Corp.*, 136 Ill. 2d 132, 140, 554 N.E.2d 223, 226 (1990). Among the factors that are relevant to the existence of a duty are the reasonable foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against it, and the consequences of placing that burden on defendant. *Ward*, 136 Ill. 2d at 140-41, 554 N.E.2d at 226-27. Foreseeability is important, but it is not determinative. In a sense, in retrospect, almost everything is to some extent foreseeable. Foreseeability means that which it is objectively reasonable to expect, not merely what might conceivably occur. *Genaust v. Illinois Power Co.*, 62 Ill. 2d 456, 466, 343 N.E.2d 465, 471 (1976). "[I]t is not objectively reasonable to expect that a person, knowing the danger of electricity if metal should contact electrical wires, would attempt to install a metal tower and antenna in such close proximity to electrical wires." *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471. *Genaust* sustained the dismissal of a strict liability count where a plaintiff was injured installing a CB antenna.

On the issue of foreseeability, plaintiff argues "the evidence indicates that Illinois Power actually knew that uninsulated or inadequately insulated power lines caused at least seven deaths and injuries in the past five years." Plaintiff's argument is based on her supplemental request No. 7, which asked for "any and all documents regarding fatalities or injuries to humans resulting from the power lines owned or controlled by ILLINOIS POWER within the past [five] years." Illinois Power's response listed the names of seven individuals, along with the dates and locations of their deaths, and a brief description of the incident (three involved ladders, three involved CB antennas, and one a flagpole; five were said to involve the primary line).

Plaintiff's argument is a "cause in fact" argument: the accidents would not have happened if the lines had been fully insulated. "Cause in fact" arguments, however, add little to the analysis of negligence, duty, and proximate cause. If a child asks her mother to drive her the two blocks to school because it is cold outside, and while doing so the mother's car slides into another car on the ice, the child could be said to be the "cause" of the accident. The accident would not have happened if the child had not made the request. Nothing was wrong, however, with the child making the request. A more accurate statement in the present case might be that the seven deaths were caused by the improper use of tall metal objects in close proximity to live electrical wires. See *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471; *Lee v. Chicago Transit Authority*, 152 Ill. 2d 432, 455, 605 N.E.2d 493, 502 (1992) ("legal cause" is a policy decision that limits how far a defendant's legal responsibility should be extended for conduct that, in fact, caused the harm).

■ It is not a breach of duty to supply electricity to a community knowing that, over time, electrocution is likely. The benefits of electricity outweigh the disadvantages. Perhaps by insulating and maintaining every power line in the State of Illinois we could prevent any further deaths by electrocution, but doing so would involve a burden of some magnitude and consequences to the public. It is not a breach of duty to use uninsulated wires in areas where the public is unlikely to come in contact with them. *Watkins v. Mt. Carmel Public Utility Co.*, 165 Ill. App. 3d 493, 498-99, 519 N.E.2d 10, 14 (1988) (lines parallel to a road, 13 feet from a catwalk connecting tanks installed many years after the lines had been erected).

"With the advance of civilization electricity has become a necessity, and in order to make it useful to man it must be carried from place to place." *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 312-13, 45 N.E.2d 665, 673 (1942). Restrictions governing the handling of electricity must, in view of its commercial and domestic importance, be reasonable. Persons engaged in the transmission of electricity are not insurers of the safety of the public. *Merlo*, 381 Ill. at 313, 45 N.E.2d at 673 (holding there was a duty to insulate power lines in close proximity to a street where men were working with cranes).

*Merlo* suggested there was a duty to insulate lines "where the public is likely to come in contact with them." *Merlo*, 381 Ill. at 313, 45 N.E.2d at 673; *cf. Clinton v. Commonwealth Edison Co.*, 36 Ill. App. 3d 1064, 1068, 344 N.E.2d 509, 513 (1976) ("[e]lectricity is an inherently dangerous and deadly force which should be regarded with a high degree of care by those engaged in the business of supplying electrical energy"). *Merlo* took a more restrictive view of utility liability than *Clinton*, and *Genaust* took an even more restrictive view. Utilities need not anticipate that persons, "knowing the danger of electricity if metal should contact electrical wires, [will] attempt to install a metal tower and antenna in such close proximity to electrical wires." *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471; *In re Estate of Martin*, 202 Ill. App. 3d 659, 663, 559 N.E.2d 1125, 1128 (1990) ("[o]ne might find *Genaust* and *Merlo* inconsistent"); *cf. Watkins*, 165 Ill. App. 3d at 499, 519 N.E.2d at 14 (*Genaust* and *Merlo* not inconsistent).

"Economic realities make unrealistic the possibility that utility companies might insulate all of their power lines, which in many instances amount to thousands of miles." *Watkins*, 165 Ill. App. 3d at 499, 519 N.E.2d at 14 (upholding counts against landowner, dismissing counts against utility). Because a utility operates in a widespread area, with lines over thousands of miles, it does not seem appropriate for a court to declare that a utility has a duty to insulate particular

lines, while another court may declare the contrary. There should be a single rule on such a basic question and that rule should come from a body with more expertise than a court. In this case, as in *Watkins*, plaintiffs alleged that stated company policies and National Electric Safety Code sections imposed a duty upon defendant utility. Again, as in *Watkins*, plaintiffs have not been able to show any violation of these provisions. *Watkins*, 165 Ill. App. 3d at 499, 519 N.E.2d at 14; *cf. Schmall v. Village of Addison*, 171 Ill. App. 3d 344, 350, 525 N.E.2d 258, 262-63 (1988) (proof of compliance with codes and regulations is only considered evidence tending to show due care and is not conclusive of the question of negligence).

This court has reversed a summary judgment for a utility in a case where the utility located uninsulated power lines 13 feet above and nearly over the center of an existing feed bin that had to be accessed from the top. *Martin*, 202 Ill. App. 3d at 664, 559 N.E.2d at 1128. We distinguished *Icenogle v. Myers*, 167 Ill. App. 3d 239, 521 N.E.2d 163 (1988), as a case "wherein the lines were located over a public right-of-way and were not over the grain bin." *Martin*, 202 Ill. App. 3d at 664, 559 N.E.2d at 1128-29. We concluded "the *Merlo* case and its progeny are more appropriate to the facts in this case than the *Genaust* case and its progeny." *Martin*, 202 Ill. App. 3d at 665, 559 N.E.2d at 1129. The supreme court granted a petition for leave to appeal in *Martin*, but the case was then dismissed upon the stipulation of the parties. Assuming *Martin* is good law, it is distinguishable from the present case, where the lines were located over a public right-of-way, did not interfere with the use of private property, and had been in place long before the CB antenna was erected.

Plaintiff cites other cases that she argues support her view. In *Schmall*, an electrician was killed while he was helping install a light pole near a power line, when a crane operated by another employee contacted the line. *Schmall*, 171 Ill. App. 3d at 346, 525 N.E.2d at 260. The *Schmall* court reversed summary judgment for the utility, citing the *Merlo* rule that the utility owes a duty where "persons *might* come in contact with or proximity to the wires." (Emphasis added.) *Schmall*, 171 Ill. App. 3d at 350, 525 N.E.2d at 262, citing *Merlo*, 381 Ill. at 314, 45 N.E.2d at 674. It is interesting that *Schmall* does not mention *Genaust*. We disagree with *Schmall*. The test is not what might conceivably occur, but what is objectively reasonable to expect. *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471. Again, "it is not objectively reasonable to expect that a person, knowing the danger of electricity if metal should contact electrical wires, would attempt to install a metal tower and antenna in such close proximity to electrical wires." *Genaust*, 62 Ill. 2d at 466, 343 N.E.2d at 471.

Plaintiff also cites *Ploense*, which held that whether the utility had a duty to insulate its wires at the location of the accident was a factual question, including whether it was reasonably foreseeable that persons might reasonably come into proximity of the wires. *Ploense v. Illinois Power Co.*, 2 Ill. App. 3d 874, 879, 275 N.E.2d 920, 924 (1971) (holding duty is a fact question, but contributory negligence is a matter of law). *Ploense*, however, predated *Genaust* and is no longer good law.

The dispute whether the lines were ever insulated may be one of semantics—whether the lines were "insulated" or whether they were "weatherproofed."

> "Practically all wire used in the transmission and distribution of electricity is insulated with a two-ply or three-ply braid weatherproof covering. This is for the purpose of protecting it against atmospheric conditions and is not for the purpose of protecting persons coming in contact with it from shock." *Merlo*, 381 Ill. at 313, 45 N.E.2d at 673.

Plaintiff argues that even if Illinois Power did not originally have a duty to insulate these lines, once it chose to insulate them it had a duty to do so in a nonnegligent manner. Even assuming plaintiff is correct on the facts, however, how did any conduct on the part of Illinois Power contribute to the death of decedent? Plaintiff could not complain if Illinois Power, having no duty to insulate at all, supplied insulation that was, say, only 50% effective. It has been held that a utility has a duty to warn that a weatherproof covering that gave a deceptive appearance of insulation was not insulation. *German v. Illinois Power Co.*, 115 Ill. App. 3d 977, 983, 451 N.E.2d 903, 907 (1983). In the present case, however, it is clear that decedent recognized that touching the electric lines with the antenna could result in electrocution, decedent attempted to avoid touching the power lines, and decedent was not relying on any coating on the lines to protect him.

### III. CONCLUSION

We affirm the trial court's judgment, concluding that Illinois Power had no duty to insulate its power lines and had no further duty to protect decedent under the circumstances of this case, and granting summary judgment to Illinois Power.

Affirmed. .

STEIGMANN, P.J., concurs.

JUSTICE MYERSCOUGH, dissenting:
I respectfully dissent. This case comes to us upon the trial court's

granting of summary judgment in favor of Illinois Power. The majority states that "[i]t is not a breach of duty to supply electricity to a community knowing that, over time, electrocution is likely." 325 Ill. App. 3d at 610. I agree. The majority further notes that " '[e]conomic realities make unrealistic the possibility that utility companies might insulate all of their power lines, which in many instances amount to thousands of miles.' " 325 Ill. App. 3d at 610, quoting *Watkins*, 165 Ill. App. 3d at 499, 519 N.E.2d at 14. I also agree. However, when a utility company undertakes the duty to insulate its power lines, then it must do so in a nonnegligent manner.

Here, Illinois Power denies that the lines were insulated. Plaintiff, however, maintains that the lines were insulated. In support of her position, plaintiff presented an affidavit by an electrical engineer who examined the power lines and found that the lines were covered by a degraded insulating material. Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." 735 ILCS 5/2—1005(c) (West 1998). A question of fact remains as to whether Illinois Power in fact insulated the power lines and, thereby, assumed the duty to maintain those insulated lines. Therefore, summary judgment is not proper. I, therefore, respectfully dissent.